UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CRIS LOPES,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 2:18-cv-00237 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff applied on August 1, 2014 for SSI and disability insurance benefits, alleging disability beginning December 5, 2011. Administrative Transcript ("AT") 19. Plaintiff alleged he was unable to work due to degenerative disc disease, nerve pain, and limited mobility. AT
1

123. In a decision dated June 15, 2017, the ALJ determined that plaintiff was not disabled.[1] AT 36. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2016.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 5, 2011 through his date last insured of June 30, 2016.
>
> 3. Through the date last insured, the claimant had the following severe impairments: restless leg syndrome, lumbar degenerative disk disease with radiculopathy, and major depressive disorder.

////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. The claimant can lift, carry push, and/or pull twenty pounds occasionally and ten pounds frequently. He can sit for eight hours in an eight-hour workday. He requires a sit/stand option requiring the opportunity to sit for 20 to 40 minutes after which he requires the opportunity to change positions but does not need to leave the workstation. The claimant can stand for 30 to 40 minutes at a time for a total of six hours in an eight-hour workday. He cannot climb ladders, ropes, or scaffolds. He can occasionally stoop, crawl, crouch, or kneel. The claimant can receive, remember, understand, and carry out simple and detailed instructions but cannot perform complex instructions. He can occasionally interact with the public and can frequently interact with coworkers and supervisors. He can adjust to simple changes in the workplace and can make simple workplace judgments.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

7. The claimant was born on xx/xx/1962 and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not a material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

AT 21-35.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ failed to give adequate reasons for rejecting plaintiff's testimony; (2) the mental RFC finding is based on insubstantial evidence and legal error; and (3) the physical RFC finding is based on insubstantial evidence and legal error.

////

3

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## ANALYSIS

### A. Credibility

Plaintiff asserts that the ALJ failed to provide sufficient reasons for discounting his subjective symptoms, citing Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) (ALJ's failure "to identify the testimony she found not credible" and "link that testimony to particular parts of the record supporting her non-credibility determination" was legal error). See also Treichler v. Comm'r of Soc. Sec., 775 F.3d 1090, 1102-1103 (9th Cir. 2014) (ALJ's failure to

4

"specifically identify the testimony" he found not credible was error; boilerplate statement that symptoms were not credible to the extent they were inconsistent with the RFC was insufficient); Morsea v. Berryhill, 725 Fed. Appx. 463, 465 (9th Cir. Feb. 12, 2018) (unpublished) (ALJ "failed to identify the testimony from the claimant found not credible and explain what evidence undermined his testimony. Although the ALJ summarized claimant's testimony and also summarized the medical evidence in the record, the findings were general in nature, which is insufficient for an adverse credibility determination."), citing Treichler, 775 F.3d at 1102.

Here, the ALJ summarized plaintiff's testimony as follows:

> The claimant alleges he cannot work due to back pain with nerve pain and depression. The claimant last worked in December 2011 doing in-home care for his father-in-law and can no longer perform that type of work because he is not able to lift patients. Prior to working as an in-home support services worker, he worked for 30 years as a construction supervisor supervising up to 50 workers and cannot perform that job because of physical pain and limitations, i.e., he has difficulty getting around, bending (*sic*) a hammer, and lifting walls. [Record citation.] He has become depressed due to his physical conditions and received psychiatric treatment for depression and audio and visual hallucinations. He becomes overwhelmed by simple tasks such as filling out paperwork, reading, and associating with people. He tends to self-isolate. He experiences episodes of crying.
>
> The claimant further testified that he cannot work because he can barely function; he has a lot of pain in his legs and back. He takes many medications including gabapentin, ibuprofen, methadone, and Wellbutrin. The gabapentin and methadone make him feel dizzy. He is in constant pain, feels very fatigued, and spends two hours per day lying down due to back pain. He was offered surgery, which he said would cost $7,000.00 and that he cannot afford.
>
> The claimant lives in a house with his wife and twenty-year-old son. The claimant has difficulty performing activities of daily living. . . . He reported that he could only walk 100 yards before requiring a ten-minute break.

AT 25; see also AT 28-29, 626 (plaintiff reported in 2015 consultative psychological exam that "he was limited in his ability to stand, sit, and walk. . . . He generally spends his days lying down to relieve back pain. . . . He has insomnia due to pain"); AT 30, 1233-1237 (plaintiff reported in 2016 orthopedic evaluation "worsening lower back pain" that radiated down both legs, and that he could stand, walk and sit for about 15 minutes).

5

After summarizing the lay witness testimony[2], the ALJ wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the claimant's symptoms concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical evidence and other evidence.

AT 25. The ALJ then summarized the objective medical evidence for several pages but did not explain what evidence undermined plaintiff's testimony or gave reason to discount his credibility. AT 26-32. The ALJ made no effort to link any part of plaintiff's testimony to any part of the record.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief"). "An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient[.]" Treichler, 775 F.3d at 1103 (internal quotations and citation omitted). "The ALJ must identify the testimony that was not credible, and specify what evidence undermines the claimant's complaints." Id., citing Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotations omitted). Here, the ALJ failed to specify which parts of plaintiff's testimony he deemed not credible, or supply clear and convincing reasons for discounting it.

/////

---

[2] The ALJ noted, for example, that plaintiff's wife of 36 years reported that plaintiff "is in constant pain, has extreme fatigue and headaches. . . . His pain affects his ability to lift, carry, perform postural activities, sit, stand, and walk. He has difficulty performing tasks." AT 25; see AT 341-349.

6

The <u>Treichler</u> court continued:

> Nor is the error harmless. Because the ALJ set out his RFC and summarized the evidence supporting his determination, the government argues that we can reasonably infer that the ALJ rejected Treichler's testimony to the extent it conflicted with that medical evidence. But we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. [Citation omitted.] Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence. [Citation omitted.] No such reasoning is present here.

775 F.3d at 1103; see also <u>Brown-Hunter</u>, 806 F.3d at 494 (where ALJ "never identified <u>which</u> testimony she found not credible, and never explained <u>which</u> evidence contradicted that testimony," decision fails to meet ALJ's responsibility to provide reasons for her adverse determination); <u>Powers v. Colvin</u>, No. 1:15-cv-00077 EPG (E.D. Cal., Order dated June 21, 2016) (reversing and remanding for reassessment of claimant's credibility where ALJ failed to specify clear and convincing reasons to discount it). Plaintiff is entitled to summary judgment on this claim.

B. <u>Mental RFC</u>

Plaintiff next claims that the ALJ's mental RFC finding is based on insubstantial evidence, as the ALJ improperly rejected the opinions of plaintiff's treating psychiatrist and examining psychologist.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. <u>Id</u>.; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. <u>Lester</u>, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be

7

rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Plaintiff was first diagnosed with depression and prescribed an antidepressant in December 2014. AT 608. Dr. Imnas Halos Coquia, a psychiatrist, began treating plaintiff in February 2015, when she diagnosed him with Major Depression, single episode, and prescribed an antidepressant. AT 594-597.

One month later, Dr. Michelina Regazzi, a psychologist, performed a psychiatric evaluation of plaintiff at the request of the state agency. AT 624-628. Plaintiff reported that he "had the depression for a little over one year, and that it has slowly gotten worse." AT 624. AT 624. "His symptoms include lack of motivation, anhedonia, insomnia, reduced appetite, irritability, and anger outbursts." AT 627. Plaintiff also reported chronic back pain. AT 625. Dr. Regazzi opined that plaintiff was "markedly limited" in two functional areas: (1) his ability to complete a normal workday or workweek without interruptions resulting from his psychiatric condition" and (2) his ability to deal with the usual stresses encountered in a competitive work environment. AT 627-628. Dr. Regazzi found plaintiff "moderately limited" in his ability to maintain regular attendance in the workplace and interact with coworkers and the public. AT 627.

////

////

////

On June 23, 2016, plaintiff experienced acute psychiatric decompensation and was admitted into the partial program at Heritage Oaks Hospital for treatment.[3] AT 641-643. After a week, psychiatrist Dr. Robin Lin diagnosed him with Major Depressive Disorder, recurrent, severe, without psychotic features. AT 653. He indicated he needed additional time in the program in order for his medication to take effect and his mood to stabilize. AT 653. Plaintiff was discharged after a three-week program on July 14, 2016. AT 634.

In January 2017, Dr. Coquia completed a medical source statement for plaintiff. AT 1421. Dr. Coquia opined that plaintiff had "marked limitations" in the following areas: (1) ability to maintain concentration and attention (for simple and/or complex tasks); (2) ability to withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity; (3) ability to understand, remember, and carry out technical or complex job instructions; and (4) ability to received and carry out instructions from supervisors. AT 1421. Dr. Coquia found that plaintiff had "moderate limitations" in the ability to deal with the public; interact with coworkers; and understand, remember, and carry out simple job instructions. AT 1421. She opined that plaintiff would likely miss five days of work per month due to mental issues. AT 1421.

The ALJ addressed Dr. Coquia's mental source statement as follows:

> Dr. Coquia was the claimant's psychiatrist beginning in February 2015 after his return from Hawaii. . . . Her [2015] mental status exam showed only depressed, anxious, irritable mood and restricted affect. There are few other mental health follow up notes to support her opinion the claimant has many marked limitations in his ability to perform work from a mental standpoint. Accordingly, the undersigned finds the opinion lacks support of substantial evidence and assigns the opinion little weight.

AT 33; see AT 32 (summarizing Dr. Coquia's opinion).

The ALJ did not here consider plaintiff's three-week partial hospitalization in 2016. Nor did the ALJ note that Dr. Regazzi similarly found plaintiff to have marked limitations in being able to deal with workplace stresses and maintain a normal work schedule, though he summarized this opinion in the decision.[4] AT 29. While Dr. Regazzi's opinion as to plaintiff's mental

---

[3] Plaintiff testified that he was not hospitalized overnight. AT 82.
[4] The ALJ did not explain why he discounted Dr. Regazzi's findings.

limitations was largely consistent with Dr. Coquia's, the ALJ did not discuss this corroborating evidence for the treating doctor's opinion. See Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2013) (ALJ erred when she discounted treating doctor's opinion but "did not explicitly compare [treating opinion] to other medical evidence – and therefore failed to recognize that no other treating or examining physician disagreed with" treating doctor).

Moreover,

> [t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice). Here, the ALJ did not provide legally sufficient reasons for rejecting treating physician Dr. Coquia's opinion. Nor did the ALJ supply any reason for discounting the similar findings of examining physician Dr. Regazzi.

The ALJ noted plaintiff's hearing testimony that "[h]e becomes overwhelmed by simple tasks such as filling out paperwork, reading, and associating with people. He tends to self-isolate. He experiences episodes of crying." AT 24; see AT 109-110. Plaintiff testified that he would likely miss work ten days a month due to mental symptoms. AT 110. Plaintiff's testimony was improperly discounted, as discussed above.

The ALJ concluded that plaintiff had the mental RFC to "receive, remember, understand, and carry out simple and detailed instructions" but not complex instructions. AT 23. "He can occasionally interact with the public and can frequently interact with coworkers and supervisors. He can adjust to simple changes in the workplace and can make simple workplace judgments." AT 23-24. While the RFC incorporates some mental limitations, it did not account for the treating and examining physicians' opinions, or plaintiff's own statement, that he had marked

limitations in dealing with ordinary workplace stresses and would likely miss several days of work per month due to mental symptoms. The vocational expert (VE) testified that, if a person with plaintiff's RFC "cannot handle competitive work eight hour[s] a day, five days a week," he would be unlikely to find work, although a worker who was "doing well" could miss up to two days per month. AT 119-120. The undersigned concludes that the ALJ's error in weighing the treating and examining physicians' opinions as to mental impairment was not harmless, especially when considered in conjunction with the error in discounting plaintiff's testimony.

### C. Physical RFC

Finally, plaintiff asserts that the ALJ improperly discounted the opinion of Dr. Roger Raimundo, plaintiff's primary care physician, as to plaintiff's physical work-related impairments, such that the physical RFC is not supported by substantial evidence.

Dr. Raimundo began treating plaintiff in October 2015. AT 960-962. He prescribed Trazadone for plaintiff's poor sleep and continued him on Gabapentin and Ibuprofen for pain. AT 960-961. In December 2015, after plaintiff presented to an emergency room for back pain, Dr. Raimundo noted that he would treat plaintiff's acute symptoms with the steroid Prednisone. AT 1010. In January 2016, Dr. Raimundo prescribed methadone up to twice a day for "low back pain . . . radiating bilaterally to lower extremities," and continued Gabapentin for nerve pain in the legs. AT 1063-1064. Dr. Raimundo continued to treat plaintiff for pain and other symptoms throughout 2016. In January 2017, after plaintiff reported worsening recurring spine pain at a level of "9 severe," Dr. Raimundo prescribed a Prednisone taper for "current acute on chronic symptoms." AT 1330, 1337. On January 6, 2017, he noted that plaintiff appeared "in mild to moderate distress and alternating from standing to sitting during visit during symptoms." AT 1341. On examination, plaintiff's range of motion was "limited due to pain," with "moderate tenderness to palpation." AT 1341.

Also on January 6, 2017, Dr. Raimundo filled out a medical questionnaire, stating that plaintiff was unable to work full-time at any exertional level, including sitting down, due to lumbar pain and spondylosis. AT 1238. He opined that plaintiff could lift and carry five pounds occasionally; sit for 10 to 15 minutes at a time for a total of two hours; and stand/walk for 10 to

15 minutes at a time for a total of two hours. AT 1238. He noted that plaintiff needed to alternate between sitting and standing/walking to alleviate his symptoms. AT 1238.

The ALJ gave Dr. Raimundo's opinion little weight, finding the limitations excessive "given the examination findings, objective imaging scans, and treatment regimen[.]" AT 33. Plaintiff's RFC included the ability to sit for eight hours in an eight-hour workday. AT 23. "He requires a sit /stand option requiring the opportunity to sit for 20 to 40 minutes after which he requires the opportunity to change positions but does not need to leave the workstation. The claimant can stand for 30 to 40 minutes at a time for a total of six hours in an eight-hour workday." AT 23. Based on the VE's testimony about an individual with this RFC, plaintiff was found to be not disabled. AT 35-36. The VE testified that he could perform jobs with a sit/stand option such as agricultural produce sorter, assembler, and fruit grader operator. AT 36.

At the hearing, plaintiff testified that he could only sit and watch television for 10 minutes without having to stand up for 10 to 15 minutes, and that he repeated this sit-stand pattern all day. AT 99. He also testified that, in an eight-hour day, he spent about two hours lying down. AT 105; see also AT 1233 (plaintiff's 2016 report to orthopedist "that he could stand, walk and sit for about 15 minutes); AT 348 (wife's third-party statement that plaintiff "can't go do dinner because he can't sit long enough to get through it."). The undersigned notes that, if credited, plaintiff's statements are consistent with the opinion of his treating physician that he could only sit, stand, and walk for brief periods without switching position.

Based on the foregoing, the court finds that plaintiff is entitled to summary judgment with respect to the claims that the ALJ improperly discounted plaintiff's testimony and the opinions of his treating and examining physicians as to mental impairment.[5]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

---

[5] The court does not reach the merits of the third claim.

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record has been fully developed and further administrative proceedings would serve no useful purpose. In this regard, the record includes multiple medical opinions, medical evidence, plaintiff's testimony, the testimony of lay witnesses, and the testimony of a vocational expert. As discussed above, the ALJ has failed to provide legally sufficient reasons for rejecting multiple items of evidence. And the vocational expert's testimony established that, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. Moreover, the record as a whole does not create serious doubt as to whether plaintiff is, in fact, disabled within the meaning of the Social Security Act.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 15) is denied;

3. The Commissioner's decision is reversed;

4. This matter is remanded for the immediate award of benefits; and

/////

/////

5. The Clerk of the Court shall enter judgment for plaintiff and close this case.

Dated: March 19, 2019

/s/ Carolyn K. Delaney
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/lopes00237.ssi.ckd